UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

    -against-                                                1:07-CR-386
                                                                         (LEK)

STEVEN MAIGAR,

                Defendant.

---

**MEMORANDUM-DECISION AND ORDER[1]**

Defendant Steven Maigar ("Defendant" or "Maigar") is accused of knowingly concealing more than $10,000 in U.S. Currency, to wit: approximately $345,962, and attempting to transport such currency from a place in the United States to a place outside the United States, in violation of 31 U.S.C. § 5332(a)(1). Indictment (Dkt. No. 9). On February 22, 2008, Defendant filed a motion seeking to suppress all direct and derivative evidence obtained from the stop of the vehicle in which he was a passenger. Dkt. No. 18. On June 19, 2008, the parties filed a Stipulation of Facts in lieu of an evidentiary hearing. Dkt. No. 34.

**I.    Background**

On or about July 27, 2007, at approximately 1:30 a.m., in the Rouses Point Port of Entry, in the State and Northern District of New York, Amanda Walker was operating a vehicle (the "Vehicle") registered, according to Vermont records, in the name of Amanda Walker.

---

[1] For printed publication by the Federal Reporters.

Stipulation of Facts ("Stip.") at ¶ 1 (Dkt. No. 34). Maigar does not own, nor is he registered to, the Vehicle. Id. At that date and time, Amanda Walker was attempting to drive from the United States across the border into Canada. Id. at ¶ 2. As depicted in the stipulated photographs, the Rouses Point Port of Entry is approximately three-quarters (0.75) of one mile from the United States-Canadian Border (there is swampland between the Port of Entry inspection facility and the United States-Canadian Border). See Stip., Exh. A.

United States Customs and Border Protection Officers stopped the Vehicle driven by Amanda Walker approximately seventy-two (72) feet east of the outbound inspection booths, past the last practical point for Amanda Walker to turn off and declare United States currency in excess of $10,000 at the outbound declaration booths, as required by law. Stip. at ¶ 10. By statute, any person transporting more than $10,000 Unites States currency from a place in the U.S. to or through a place outside the United States, or to a place in the United States from or through a place outside the United States is required to declare that currency at the Port of Entry and to file a report. 31 U.S.C. § 5316. On two prior occasions, Amanda Walker filed two inbound declarations at the Rouses Point Port of Entry. Stip. at ¶ 8, Exh. B and C.

The Vehicle was not stopped as a result of an alleged violation of any law, rule or ordinance. Stip. at ¶ 9. The subject vehicle was selected at random, and was inspected pursuant to a routine outbound border inspection conducted by duly authorized United States Customs and Border Protection Officers ("the Officers"). Stip. at ¶ 10.

The Officers, after stopping the Vehicle, questioned Amanda Walker if she had more than $10,000.00 U.S. currency to declare. Amanda Walker responded in the negative. Stip. at ¶ 11.

2

If called to testify, Amanda Walker would state that she told the Officers that she was going to her "boyfriend" Maigar's house. The Officers were aware of the Maigar Family and the fact that they resided in Canada. Stip. at ¶ 12. The Officers then directed Amanda Walker to exit her vehicle and open the trunk. At that time, Maigar, who was in the trunk, jumped out and began to run from the Vehicle southbound. Defendant Maigar was apprehended and taken into custody. Stip. at ¶ 13.

The Officers then inspected and searched the trunk in which Maigar had been located, and found more than $345,962.00 in U.S. currency contained in a "knap" sack located in the trunk. The inspection and search occurred without the consent of either Amanda Walker or Defendant Maigar. Stip. at ¶ 14. Maigar is a Canadian citizen and resident who is inadmissible in the U.S. due to his criminal record. Stip. at ¶ 16.

## II. Discussion

Defendant challenges the stop of the vehicle as "not based upon either probable cause or reasonable suspicion." Dft's Mem. at 6 (Dkt. No. 35). Defendant also argues that the "border exception" to the warrant requirement does not apply because the stop occurred three quarters (0.75) of one mile from the U.S.-Canada border and seventy-two (72) feet from the outbound inspection station. Defendant contends that the location where the Vehicle was stopped and/or "the 'outbound inspection station' referred to by the government" were not "at the 'border' or 'functional equivalent' of the border." Id. at 6-7.

A.   **Border search exception**

It has long been recognized that border searches are made reasonable by the person's decision to cross the border and thus are not violative of the Fourth Amendment's prohibition against unreasonable searches.  United States v. Asbury, 586 F.2d 973, 975 (2d Cir. 1978); see also States v. Irving, 452 F.3d 110, 123-24 (2d Cir. 2006) (noting that border searches are one of the exceptions to the Fourth Amendment warrant requirement).  Accordingly, border searches do not require a warrant, probable cause, or reasonable suspicion.  United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) (holding that border searches "of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant").

In addition, the enforcement provision for 31 U.S.C. § 5316--the statute requiring persons transporting over $10,000 across the border to declare so--states that "[f]or purposes of ensuring compliance with the requirements of section 5316, a customs officer may stop and search, at the border and without a search warrant, any vehicle . . . and any person entering or departing from the United States."  31 U.S.C. § 5317.

Since it is undisputed that the Vehicle was stopped while at the Rouses Point Port of Entry, the Officers had the right to stop the Vehicle and to ask Amanda Walker to open the trunk. Additionally, the Officers had the right to search the trunk.  United States v. Swarovski, 592 F.2d 131 (2d Cir. 1979) (upholding warrantless search of appellant's luggage as he was about to depart the country); see also United States v. Sierra-Garcia, 760 F.Supp. 252, 266 (E.D.N.Y. 1991) (noting that 31 U.S.C. § 5317 does not require the customs officers to have reasonable cause to believe that currency violations are being committed before conducting a search).

4

The facts also do not support Defendant's argument that the Rouses Point Port of Entry was not the "border." The Vehicle was stopped at the Rouses Point Port of Entry on its way to Canada. The three quarters (0.75) of one mile distance from the official border is not sufficient to make the location of the stop improper since the area between the location where the Vehicle was stopped and the U.S.-Canada border consists of swampland. See Stip., Exh. A; see also Sierra-Garcia, 760 F.Supp. at 266 ("The word 'border' . . . is not construed as meaning the precise line marking the boundary of a sovereign's territorial limits.").

**B.    "Functional equivalent" analysis**

In Almeida-Sanchez v. United States, the Court noted that "[w]hatever the permissible scope of intrusiveness of a routine border search might be, searches of this kind may in certain circumstances take place not only at the border itself, but at its functional equivalents as well." 413 U.S. 266, 272 (1973). A "functional equivalent" border search requires neither probable cause nor reasonable suspicion to be valid. See generally 94 A.L.R.Fed. 372, 400; United States v. Gaviria, 805 F.2d 1108, 1123 (2d Cir. 1986). The applicability of the principle extends to "items imminently to be exported, whether or not accompanying the traveler." United States v. Ajlouny, 629 F.2d 830, 834 (2d Cir. 1980). This is because "[a]pplication of the border search exception depends upon the nexus between the goods and a border crossing, regardless of the circumstances under which the property subjected to search moved or will move across the border." Id.; contra United States v. Barbera, 514 F.2d 294 (2d Cir. 1975) (finding that a non-permanent "roving" patrol stop 10 miles from the border of a bus that had previously stopped in another town after crossing the border was not the functional equivalent of a border search),

United States v. Jackson, 825 F.2d 853 (5th Cir. 1987) (finding that a highway checkpoint, 14 miles from border, with a high level of domestic-only non-border traffic, was not a border equivalent).

Based on this analysis, no probable cause or reasonable suspicion was required for the Officers to stop the Vehicle, inspect its trunk, or search the "knap" sack inside it. The car and its contents were about to cross the U.S.-Canada border, or at the very least to pass the Officers into a three-quarter (0.75) mile stretch of road bordered by swampland that leads only to the border. Thus, even under the "functional equivalent" analysis, the imminent border crossing gave the Officers the right to conduct the stop and the inspection and search of the trunk and "knap" sack.

**C.    Search of the trunk and "knap" sack**

Defendant argues either that the search of the trunk was tainted by the illegal stop of the automobile or that there was no reasonable suspicion or probable cause to further search the vehicle without a warrant. As discussed above, the Officers did not need a warrant, probable cause, or reasonable suspicion to search the Vehicle and its contents because it was at a border stop and about to cross the border. In addition, once Defendant, with whom the Officers were familiar, jumped out of the trunk and began to run away from the Officers, they would have had sufficient factual basis upon which this Court would find at least reasonable suspicion for them to search the Vehicle even if the stop were not near the border.

**III.    Conclusion**

Accordingly, it is hereby

6


**ORDERED**, that Defendant's Motion to Suppress (Dkt. No. 18) is **DENIED** in its entirety; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:	July 30, 2008
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge